IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID MULLINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 25-1366** |
| | ) | |
| **DUQUESNE UNIVERSITY OF THE** | ) | |
| **HOLY SPIRIT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION and ORDER**

David Mullins, proceeding pro se, commenced this action by requesting leave to proceed in forma pauperis through the filing of an "Application to Proceed in District Court without Prepaying Fees or Costs." ECF No. 1. In his Complaint, Mr. Mullins sues Defendant Duquesne University of the Holy Spirit, alleging violations of Title IX, the Americans with Disabilities Act (ADA), Intentional Infliction of Emotional Distress, Negligent Hiring, Retention, and Supervision, Gross Negligence/Recklessness, and Civil Conspiracy. ECF No. 1-1. In support of his Complaint, Mr. Mullis has submitted seven Exhibits. ECF Nos. 1-6 to 1-12. Mr. Mullins has also filed a Motion for a Temporary Restraining Order based upon the same allegations set forth within his Complaint. ECF No. 1-3, 1-4.

The Court finds that Mr. Mullins is indigent within the meaning of 28 U.S.C. § 1915(a), and that he is without sufficient funds to pay the required filing fee. Thus, he will be granted leave to proceed in forma pauperis and the Complaint will be filed. After reviewing the Complaint and attached Exhibits, however, the Court concludes that Mr. Mullins has failed to state a claim upon which relief can be granted. Therefore, the Complaint will be dismissed, but Mr. Mullins will be given with leave to amend some of the claims. The Motion for Temporary

Restraining Order will also be denied, without prejudice, as the dismissed claims relate to his request for relief through his Motion.

## I.    Factual Background

Mr. Mullins, a male, is a doctoral student attending Duquesne University. Compl. § II. In June 2025, he was sharing a living space with a female roommate. *Id.* at ¶ 32[1]. On June 30, 2025, Mr. Mullins reported safety concerns to the Dean of Students, Adam Wasilko, arising out of his roommate having allegedly engaged in "stalking and intimidation." *Id.*; Ex. 1. Mr. Mullins reported that on the evening of June 30, 2025, his roommate approached him in the kitchen, and after Mr. Mullins stated he did not wish to talk, the roommate "yell[ed] at [him], got within inches of [his] face, and aggressively followed [him] throughout the apartment." Email from Mullins to Wasilko, June 30, 2025, Ex. 1, ECF No. 1-6 at 2. Mr. Mullins further stated to Dean Wasilko as follows:

> When I asked if she was following me, she confirmed it aloud. She pursued me up the stairs toward my room, saying "I'm coming up," and only stopped just short of entering [my room]. I locked myself in my room and remained there, visibly shaken.

*Id.* Mr. Mullins explained that he no longer felt safe sharing a living space with her, and he was seeking emergency housing and other relief. *Id.* He also inquired as to whether his roommate's conduct constituted a violation of university conduct standards. *Id.*

In a July 1, 2025 responsive email, Dean Wasilko asked Mr. Mullins if he sought on-campus housing. Email from Wasilko to Mullins, July 1, 2025, Ex. 1, ECF No. 1-6 at 3. He also advised him to file a police report with the University's campus police. Id. Dean Wasilko also offered his opinion that the events Mr. Mullins described "doesn't sound like a code of conduct

---

[1] The Complaint is organized by Roman Numeral Section Numbers (for example, section I is jurisdiction and venue). Numbered paragraphs appear for the first time in section III and begin with paragraph 32. There are no paragraphs numbered 1 through 31 in the Complaint.

violation at this point." *Id.* Mr. Mullins alleges that Dean Wasilko's response was "dismissive." Compl. at ¶ 33.

From July 20 to July 23, 2025, Mr. Mullins "documented ongoing fear and repeated requests for protection." *Id.* at ¶ 34. Mr. Mullins characterizes the various University administrators' responses to his reports as, retaliatory. *Id.* at ¶ 35. On July 2, 2025, Mr. Mullins filed a police report with the City of Pittsburgh Bureau of Police, which included allegations that his roommate stalked and intimidated him. *Id.* at ¶¶ 36-37.

Next, Mr. Mullins alleges that four University administrators refused to provide Title IX supportive measures or protections. *Id.* at ¶38. The four administrators are: Dean of Students, Adam Wasilko; the Chair of the Department of Philosophy, Daniel Selcer; the Title IX Coordinator, Alicia Simpson; and the Executive Director of Student Conduct (& Deputy Title IX Coordinator), Anne Sawa. *Id.* On August 13, 2025, Mr. Mullins sent an email to Alicia Simpson, Anne Sawa, Daniel Selcer, and fifteen other persons or entities, requesting the emergency removal of his roommate or implementation of specified other protective measures, or, a written risk analysis. Id. at ¶ 40; Ex. 4, Email from Mullins to Simpson et al, Aug 13, 2025, ECF No. 1-9 at 2-6. The University's Title IX Coordinator, Alicia Simpson, responded to Mr. Mullins by stating in part, as follows:

> Your concerns and allegations warrant further information gathering and review by Public Safety, the Office of Student Conduct and the Office of Title IX in order to evaluate the situation and determine an appropriate response to your concerns and needs.

Email from Simpson to Mullins, Aug. 13, 2025, Ex. 4, ECF No. 1-9 at 6. Ms. Simpson requested that Mr. Mullins attend a meeting with the involved offices "to gather additional information," which she explained was a "standard and essential practice," and that it would allow the offices

to "better understand your allegations, your current situation and assess appropriate next steps." ECF No. 1-9 at 7.

In response, Mr. Mullins stated he was not available for any type of meeting and that the issue should be handled in writing only. Email from Mullins to Simpson, Aug. 13, 2025, Ex. 4, ECF No. 1-9 at 8. Mr. Mullins then repeated his earlier email request that action be taken, but this time he requested that the parties take one of two options by 5:00 p.m. that day, even though Mr. Mullins' email was sent at 4:20 p.m., which gave the University employees no more than forty minutes to comply with Mr. Mullins' requests. ECF No. 1-9 at 8, 9. At 5:01 p.m. on August 13, 2025, Mr. Mullins sent another email to Ms. Simpson (and others) noting that the University had not provided "written confirmation of Emergency Removal or the full supportive meases set by 5:00 PM ET deadline today (August 13)." Email from Mullins to Simpson, Aug, 13, 2025, ECF No. 1-9 at 10. He also confirmed that he is "proceeding in writing only." *Id.* Mr. Mullins sent several additional emails documenting that the University had not acted, and again requesting a response. Email form Mullins to Simpson, Aug. 13, 2025 (7:31 p.m.), ECF No. 1-9 at 16; Email from Mullins to Sawa, Aug. 16, 2025, ECF No. 1-9 at 15; and Email from Mullins to Sawa, Aug. 18, 2025, ECF No. 1-9 at 11-12.

Ms. Simpson replied to Mr. Mullins, stating that all complaints invoking Title IX, Student Conduct, and/or Public Safety, "involve a request for a meeting" to ensure that all relevant information is gathered. ECF No. 1-9 at 13. Ms. Simpson further explained that, because Mr. Mullins was unwilling to attend a meeting, she was making a preliminary determination as to whether there was Title IX jurisdiction based upon the limited information Mr. Mullins had provided. *Id.* Ms. Simpson stated: "I have determined that the reported alleged conduct does not meet [Title IX policy's], nor [the non-Title IX sexual misconduct policy's] definitions of

prohibited conduct, even if proven to be true." *Id.* Thus, Ms. Simpson concluded that the Title IX Office was without jurisdiction over Mr. Mullins' report. *Id.*; Compl. at ¶ 41.

Dr. Sawa also emailed Mr. Mullins and emphasized that a meeting was necessary to address Mr. Mullins' complaints. Email from Sawa to Mullins, Aug. 15, 2025, ECF No. 1-9 at 14. Dr. Sawa acknowledged that Mr. Mullins had refused to meet, either in person or by Zoom. *Id.* She emphasized, however, that a meeting with the Office of Student Conduct was necessary or else his allegations would no longer be considered. *Id.* She also gave Mr. Mullins "notice that [he] must stop sending mass emails to University officials and offices about your concerns." *Id.* She told Mr. Mullins that he must communicate only with the resources offered or else he may face charges for violating the code of conduct. *Id.*; Compl. at ¶ 42.

With respect to his disability claim, on August 23, 2025, Mr. Mullins submitted a doctor's note "documenting disability needs and requesting remote access." Compl. at ¶ 43. In an email accompanying his doctor's note, Mr. Mullins told the recipients that the note provides "clear medical documentation of my situation," and that the doctor recommends every effort be made to avoid "proximity to the individual in question" as such "would significantly worsen my condition and impair my academic functioning." Email from Mullins to Selcer, Aug 23, 2025; Ex. 6, ECF No. 1-11 at 3. In fact, the note from Dr. Jacob McBride, states as follows:

> I am a physician treating David Mullins. He's informed me he does not feel safe around a specific individual on campus, and from what he's described to me, I believe its reasonable for him to have this fear. I have advised him to involve law enforcement for his protection in response to this reasonable fear. To share a living space with this individual would cause him a great deal of stress, would be highly likely to worsen his medical condition, and could impair his academic functioning. I recommend every effort be made to avoid this.

Letter from J. McBride, DO, Aug 13, 2025. Mr. Mullins alleges the University ignored the note, failed to provide an accommodation, and told him he must go through the ADA process. *Id.* at ¶

44. In response, Mr. Selcer informed Mr. Mullins that "any requests for medical accommodations must be filed through the Office [of] Disability Services, which notifies supervisors and instructors regarding reasonable accommodations under the ADA and Section 504." Email from Selcer to Mullins, Aug. 25, 2025; Ex. 6, ECF No. 1-11 at 4-5.

Mr. Mullins asserts the following Causes of Actions: **Count 1** – Title IX: Denial of Supportive Measures after Defendant was informed of stalking and intimidation; **Count II** – Title IX: Retaliation by University employees Sawa (by threatening discipline) and Selcer (by "conditioning access on engagement with retaliatory offices" **Count III** – Americans with Disabilities Act (ADA) in that Defendants ignored Plaintiff's doctor's note requesting remote access, required him to appear in-person, and refused to accommodate him by informing Plaintiff he must go through the ADA process; **Count IV** – Intentional Infliction of Emotional Distress committed by the four University administrators; **Count V** – Negligent Hiring, Retention, and Supervision of the four University administrators; **Count VI** – Gross Negligence/Recklessness; **Count VII** – Civil Conspiracy; and **Count VIII** – Title IX: Denial of Records and Response Obligations in that Defendant failed to respond to Plaintiff's sex discrimination claims and refused to provide records.

## II.    Standard of Review

When reviewing a Complaint to determine if the plaintiff has stated claims upon which relief can be granted, the Court refers to Federal Rule of Civil Procedure 12(b)(6). Under that Rule, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

If the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted, the court must next decide whether leave to amend the complaint must be granted. The court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining*, 615 F.3d at 175).

### III.    Discussion

Where the plaintiff seeks to proceed in forma pauperis, the court "shall dismiss the case at any time if the court determines that the complaint fails to state a claim on which relief may be

granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Here, the Complaint fails to state a claim upon which

relief can be granted.

### A. Title IX Claims

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681. Title IX

encompasses student-on-student sexual harassment. *Lansberry v. Altoona Area Sch. Dist.*, 318 F.

Supp. 3d 739, 748 (W.D. Pa. 2018). To succeed on a Title IX claim of student-on-student

harassment, the plaintiff must show that:

> (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the
> harassment took place under circumstances wherein the funding recipient
> exercised substantial control over both the harasser and the context in which the
> harassment occurred; (4) the funding recipient had actual knowledge of the
> harassment; (5) the funding recipient was deliberately indifferent to the
> harassment; and (6) the harassment was so severe, pervasive, and objectively
> offensive that it could be said to have deprived the victims of access to the
> educational opportunities or benefits provided by the school.

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393, 401–02 (M.D. Pa. 2020) (citations

omitted).

The Court finds that Mr. Mullins has failed to state a plausible claim of student-on-

student sexual harassment under Title IX, and therefore he cannot sustain any of his Title IX

claims against the University. Mr. Mullins alleges that he was subject to stalking and

intimidation. He describes the stalking, as his female roommate following him throughout his

apartment on one, or perhaps two, occasions. He describes the behavior as the roommate

following Mr. Mullins throughout his apartment, but she did not follow Mr. Mullins when he

went into his own room. He describes the intimidation as, the roommate yelling at him and

getting within inches of his face. He also refers to a time when she may have blocked a doorway

entrance and/or stood in his doorway as he packed. He also recounts a time when the roommate expressed her belief that she and Mr. Mullins had an agreement about setting the temperature in the apartment, which Mr. Mullins says is not true. Finally, he expresses a fear based upon his roommate's opinions about the Second Amendment, but he admits he has no proof or knowledge that she even owns a firearm.

None of the allegations demonstrate that his roommate harassed Mr. Mullins because of his *sex*. *Lansberry*, 318 F. Supp. 3d at 749 ("even vicious, malicious, relentless bullying-is not sexual harassment"). Mr. Mullin does not provide any allegations of gender-based sexual harassment, which is a necessary element of a Title IX claim. Therefore, because Mr. Mullins is unable to state a Title IX violation, he cannot sustain his Title IX claims asserted against the University. Counts I, II, and VIII will be dismissed. Mr. Mullins will be permitted leave to amend said claims.

### B. ADA Claim

At a minimum, to establish a violation of the ADA, Mr. Mullins must allege that he has a disability. "'Disability' means 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' or 'a record of such an impairment,' or 'being regarded as having such an impairment.'" 42 U.S.C. § 12102(2)(A)-(C). Mr. Mullins has failed to allege that he has a disability under the above definition, and he does not even allege an identified disability.

Mr. Mullins relies upon his doctor's note, but the note does not identify or describe any medical condition or a disability. The doctor merely reports that Mr. Mullins told him about his roommate's actions and told him that he does not feel safe. The doctor validated Mr. Mullins' fear, but he did not provide a medical diagnosis or include any medical documentation that

would connect Mr. Mullins' safety fears to a disability. Moreover, in contrast to Mr. Mullins'
characterization of his doctor's note as stating that the doctor stated that every effort should be
made "to avoid proximity to his roommate," the doctor narrowly recommended that "every effort
be made to avoid" Mr. Mullins having to "share a living space with this individual."

The failure to properly allege a disability is fatal to Mr. Mullins' ADA claim. Without
knowledge of a disability, the Defendant could not properly engage in the process towards
providing an appropriate accommodation. Accordingly, Count III will be dismissed, but Mr.
Mullis will be given leave to amend.

### C.  State Law Claims

With the dismissal of the Title IX and ADA claims, Mr. Mullins' state law claims, which
depend upon the viability of the federal claims, are also subject to dismissal. The state law claims
are also subject to dismissal for the following reasons.

### 1.  Intentional Infliction of Emotional Distress

To sustain a claim for intentional infliction of emotional distress, a plaintiff must show
extreme and outrageous conduct which is deliberate or reckless and which causes severe
emotional distress. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 190 (1987). "In
addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's
outrageous conduct." *Reeves v. Middletown Athletic Ass'n*, 2004 PA Super 475, ¶ 17, 866 A.2d
1115, 1122–23 (2004). "[O]nly the most egregious conduct" will sustain such a claim. *Hoy v.
Angelone*, 554 Pa. 134, 151 (1998). The conduct complained of must be "so outrageous in
character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized community." *Kazatsky*, 527 A.2d at
991.

Here, Mr. Mullins allege that the University employees engaged in extreme and outrageous conduct, ignored safety threats, forced homelessness, retaliated against him, and mocked federal legal oversight, all causing Mr. Mullins severe emotional distress. As demonstrated by a recitation of Mr. Mullins' allegations, he cannot sustain a cause of action for intentional infliction of emotional distress. All four University employees accused of intentional infliction of emotional distress engaged with Mr. Mullins in a timely manner and attempted to assist him. Each of them offered suggestions and each of them requested additional information from Mr. Mullins. An effort was made to impress upon Mr. Mullins that a meeting, to gather information and discuss options, among other things, was necessary. Mr. Mullins provided an limited explanation of the situation, refused to expand on his assertions, and refused to meet with any of the employees. The conduct of each of the four University employees in respond to Mr. Mullins cannot be considered, as a matter of law, as extreme and outrageous conduct.[2] In addition, Mr. Mullins has not alleged the necessary physical harm to state a claim for intentional infliction of emotional distress. Therefore, Count IV will be dismissed with prejudice without leave to amend, as the Court concludes that it would be futile to permit amendment.

### 2.  Negligent Hiring, Retention, and Supervision

"To succeed on a claim for negligent hiring[, retention,] or supervision, a plaintiff must prove (1) the employer 'knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities

---

[2] Case law supports this conclusion, as conduct that is much more egregious has not been found to rise to the level of extreme or outrageous. In *Atkinson v. City of Philadelphia*, 2000 WL 793193, * 1, *6 (E.D. Pa. June 20, 2000), claims that a police detective submitted a false affidavit of probable cause to obtain an arrest warrant for a plaintiff, after which police forced their way into the plaintiff's home while searching to arrest him, and in the process, terrified his children, did not rise to the level of atrocity needed to sustain a claim for intentional infliction of emotional distress. Likewise, in *Sieger v. Township of Tinicum*, 1991 WL 197315, *5 (E.D. Pa. Sept. 30, 1991), claims that a township executive official knowingly issued a series of citations without probable cause and testified falsely at a hearing on the citations were deemed not to rise to the requisite level of outrageousness.

created a risk of harm to other persons' and (2) the employer's negligence in hiring and supervising the employee permitted the employee's 'incompetence, unfitness or dangerous characteristics' to proximately cause injury to a third party." *Hayward v. Salem City Bd. of Educ.*, No. CV 14-5200 (JBS/AMD), 2016 WL 4744132, at *11 (D.N.J. Sept. 12, 2016) (quoting *DiCosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)).

Mr. Mullins alleges that the four University employees did not respond to his requests in the manner he preferred, and that they did not provide him with the protective and supportive measures he requested. The employees' conduct, supported by Mr. Mullins' allegations and exhibits, does not demonstrate that any of the four employees were unfit, incompetent, or dangerous. In fact, the allegations and exhibits show that the each of the employees engaged with Mr. Mullins in a professional and polite manner. Even though Mr. Mullins alleges the University employees did not do enough, the employees clearly were responsive to his situation. Even if the allegations supported that the employees were unfit, incompetent, or dangerous, Mr. Mullins has not provided sufficient allegations to show that the University had any knowledge, or a reason to know, that any of the employees were unfit, incompetent, or dangerous in their respective roles at the school. Accordingly, Count V will be dismissed, without leave to amend, because, for Mr. Mullins to state a negligent hiring claim, he would have to assert allegations that would conflict with the allegations and the exhibits he has submitted in support of his Complaint.

### 3. Gross Negligence/Recklessness

Gross negligence, in Pennsylvania, is not a cause of action, it is a description of the degree of departure from a standard of care. *Feleccia v. Lackawanna Coll.*, 654 Pa. 324, 349,353 (2019). Gross negligence "does not rise to the level of the intentional indifference or 'conscious disregard' of risks that defines recklessness, but it is defined as an 'extreme departure' from the

standard of care, beyond that required to establish ordinary negligence, and is the failure to exercise even 'scant care.'" *Id.* (quoting *Royal Indem. Co. v. Sec. Guards, Inc.*, 255 F.Supp.2d 497, 505 (E.D. Pa. 2003). Gross negligence "involves more than a simple breach of the standard of care (which would establish ordinary negligence), and instead describes a 'flagrant' or 'gross deviation' from that standard." *Feleccia* 654 Pa. at 349.

Mr. Mullins' allegations do not support that any of the University employees engaged in an extreme departure from a standard of care in responding to Mr. Mullins' complaints and requests. Further, in general, where responses demonstrate a level of "scant care," such still does not meet the definition of gross negligence. *Id.* Count VI will be dismissed, with prejudice. Leave to amend is not granted because, for Mr. Mullins to establish "gross negligence" he would have to assert allegations that would conflict with the facts alleged in his Complaint and the exhibits he has submitted in support of his Complaint.

### 4. Civil Conspiracy

"To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979). Because all other federal and state law claims are dismissed, Mr. Mullins cannot sufficiently state a civil conspiracy claim based upon an intent to do unlawful acts in violation of Title IX, the ADA, or state law. Therefore, Count VIII will be dismissed with leave to amend. Mr. Mullins will be permitted leave to amend this claim.

### IV. Motion for Temporary Restraining Order

Mr. Mullins' Motion for a Temporary Restraining Order will be denied without prejudice. In determining whether to grant a motion seeking preliminary injunctive relief, courts

consider the following four factors: "(1) likelihood of success on the merits; (2) irreparable harm resulting from a denial of the relief; (3) the harm to the non-moving party if relief is granted; and (4) the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003); *see also Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction.") It is the moving party who bears the burden of satisfying these factors. *Bell*, 238 F. Supp. 2d at 699. "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F. 2d 187, 192 (3d Cir. 1990).

At this stage, Mr. Mullins has not sufficiently alleged, or produced evidence, to this Court's satisfaction that the elements for injunctive relief are met. In particular, the Court has concluded that Mr. Mullins is unlikely to succeed on the merits, as shown by the Court's conclusion that he has failed to state a claim upon which relief can be granted. In his Motion for a Temporary Restraining Order, he conclusorily states, the following:

> I have already fully engaged in writing and provided all documentation necessary to trigger Defendant's obligations under Title IX and the ADA. No further meetings, engagement, or cooperation from me are required.

ECF No. 1-3 at 1. But of course, neither Title IX nor the ADA support Mr. Mullins' conclusion. Both Title IX and the ADA place obligations on all parties, and it is clear from Mr. Mullins' allegations and exhibits that he is deliberately choosing not to engage with the University. Because Mr. Mullins cannot show that he is likely to succeed on the merits, the motion for a temporary restraining order will be denied.

### V.    Conclusion

Mr. Mullins request to proceed in forma pauperis will be granted, and the Complaint will be filed. As explained above, all claims will be dismissed, and the Complaint will be dismissed. As set forth in the below Order, several claims are dismissed with leave to amend. Therefore, Mr. Mullins may file an amended complaint to reassert said claims. Finally, the Motion for a Temporary Restraining Order will be denied.

Accordingly, the following order is hereby entered.

### **ORDER**

AND NOW, this 11th day of September 2025, for the reasons set forth above, it is hereby ORDERED that Plaintiff's Motion to Proceed Informa Pauperis is granted. The Clerk of Court shall file Plaintiff's Complaint.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED for failure to state a claim upon which relief can be granted. The following causes of action are hereby dismissed without leave to amend: Counts IV, V and VI.

Plaintiff is granted leave to file an amended complaint, consistent with this Opinion, as to the following causes of actions: Counts I, II, III, VII and VIII.

Any amended complaint must be filed no later than October 14, 2025. If no amended complaint is filed, this case will be closed.

> _s/Marilyn J. Horan_
> Marilyn J. Horan
> United States District Court Judge

David Michael Mullins
430 S. Fairmount St. Unit 1
Pittsburgh, PA 15232