IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID MICHAEL MULLINS,

    Plaintiff,

v.                                                          Civil Action No. 2:25-cv-01366-MJH

DUQUESNE UNIVERSITY;
ALICIA SIMPSON;
ADAM WASILKO;
ANNE MULLARKEY SAWA;
DANIEL SELCER,

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff respectfully submits this Reply in support of his Motion for Leave to File a Second Amended Complaint ("SAC"). Under Rule 15(a)(2), leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Third Circuit applies this liberal standard with particular force where, as here, a plaintiff is proceeding *pro se* and no scheduling order deadline for amendment has passed.

Defendants' opposition fails to identify any valid basis for denying amendment. They argue only futility. But the futility standard is "the same standard of legal sufficiency as applies under Rule 12(b)(6)," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d

Cir. 1997), and requires the Court to accept the SAC's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Under that controlling standard, Defendants' arguments do not—and cannot—establish futility at this stage.

The SAC should be accepted.

## I. RULE 15(a)(2)'S LIBERAL STANDARD STRONGLY FAVORS AMENDMENT HERE

The Supreme Court instructs that leave should be denied only in limited circumstances: undue delay, bad faith, prejudice, or futility. *Foman*, 371 U.S. at 182. None of those factors are present.

- Plaintiff moved promptly for amendment.
- Defendants identify no prejudice.
- There is no allegation of bad faith.
- The case remains at the pleadings stage.

Thus, the only question is whether Defendants have carried their burden to show futility. They have not.

## II. DEFENDANTS DO NOT APPLY THE CORRECT FUTILITY STANDARD

Defendants' brief does not analyze the SAC under the Rule 12(b)(6)/*Twombly–Iqbal* framework. They do not meaningfully engage with the factual allegations in the SAC. Instead, they dispute Plaintiff's chronology, intent allegations, policy interpretations, and inferences—all classic factual disputes that cannot be resolved on a futility challenge.

A futility inquiry does *not* permit:

- judicial fact-finding,

- credibility determinations,

- resolution of competing inferences, or

- weighing of competing interpretations of policies or events.

Because Defendants' arguments rely on exactly those impermissible forms of analysis, they cannot support a futility denial.

## III. DEFENDANTS' OPPOSITION CONFIRMS THE NEED FOR AMENDMENT, NOT FUTILITY

Courts in this Circuit routinely grant amendment where the parties' briefing reveals factual disputes more appropriate for discovery than dismissal.

Here, Defendants' opposition repeatedly raises factual disagreements that demonstrate precisely why amendment is proper. Their brief does not establish futility—it proves that material factual questions exist that cannot be resolved at the pleading stage.

### A. Defendants Dispute Policy Interpretation

Defendants assert that Dean Blair's interpretation of TAP No. 33 was "consistent with TAP No. 33's plain language" and "correct." Defs.' Opp. at 7–8. They contend:

> "Dean Blair made two points in her second October 22, 2025, email. K-5. The first was that, as a student, Plaintiff was not a 'Covered Party' as defined by TAP No. 33. Id. The second was that Dr. Selcer's continued serving as Plaintiff's

3

instructor was not a 'Conflict of Interest,' under the policy. Id. **Both points were consistent with TAP No. 33's plain language."**

Id. at 7 (emphasis added).

**Whether a policy interpretation is "correct" or "consistent with plain language" is a factual and legal question requiring discovery—not a basis for denying amendment.** Defendants further argue:

> "**TAP No. 33 deals with potential financial or business conflicts of interest between the University and its employees**, which is why its Section IV(d) charges the University's Senior Vice President for Finance and Business (Dr. Frist) with overseeing the policy."
>
> Id. at 8 (emphasis added).

This is Defendants' interpretation of policy scope—a disputed question of fact and policy application. Such disputes cannot be resolved on a futility challenge. They confirm that discovery is necessary to determine how TAP No. 33 has been applied in practice, what the policy's scope encompasses, and whether Dean Blair's representations were accurate.

B. Defendants Make Intent and Motive Arguments

Defendants argue that consultation between Dean Blair and Dr. Selcer demonstrates benign intent:

> "**Such consultation is not evidence of an intent to injure Plaintiff, but it is instead evidence that both she and Dr. Selcer intended to help him.**"
>
> Id. at 11 (emphasis added).

4

**Intent is a quintessentially factual question inappropriate for resolution pre-discovery.** Defendants cannot establish futility by asserting what administrators "intended." Whether conduct was undertaken with fraudulent intent or to further a conspiracy are core factual questions requiring discovery into communications, decision-making processes, and the context of administrative actions.

C. Defendants Assert What Administrative Conduct "Really Means"

Defendants contend:

> "While Plaintiff complains about the fact that Dean Blair openly informed him that she consulted Dr. Selcer to obtain background information related to Plaintiff's request to transfer out of the seminar (K-2), **there was nothing improper, let alone unlawful, about this consultation.** As an academic administrator, Dean Blair could not respond to Plaintiff's request for an alternative to the seminar without checking with Dr. Selcer, the instructor and Chair of the Philosophy Department, as to the availability of the seminar and Plaintiff's academic progress."
>
> *Id.* at 11 (emphasis added).

**Whether administrative conduct was "improper" or "unlawful" is precisely what discovery will determine.** Defendants are making factual assertions about what the consultation meant, why it occurred, and whether it was appropriate. These are merits questions that cannot support futility.

Similarly, Defendants assert:

> "Dr. Selcer's emails summarized his understanding of the August 21, 2025, Zoom meeting and Duquesne's intended course of action. MEI, at Exs. I and J. Plaintiff responded with his recollection of the meeting and disagreements with the

5

> University's decision. Id., at Ex. I, pp. 63–65. **As such, there was nothing fraudulent or improper about the underlying emails** for Dean Blair to even correct."
>
> Id. at 10 (emphasis added).

**Whether emails were fraudulent or improper is the central question in this litigation.** Defendants cannot establish futility by conclusorily asserting the answer to the very question the SAC raises.

### D. Defendants Dispute Reliance (A Fact-Intensive Element)

Defendants parse Plaintiff's allegations to make factual findings about the element of reliance:

> "At Paragraph 421 of the PSAC, Plaintiff alleges that he immediately recognized Dean Blair's October 22, 2025, understanding of TAP No. 33 was wrong. Plaintiff additionally alleges that, as of July 24, 2025, he was 'no longer relying on Defendants' expertise or representations about process.' PSAC, ¶ 208. **Therefore, Plaintiff's own allegations establish that he did not rely on Dean Blair's October 2025 representations** or any representations made by Defendants after July 24, 2025."
>
> Id. at 9 (emphasis added).

**This is precisely the kind of fact-intensive analysis that cannot support a futility determination.** Whether reliance occurred, when it occurred, and whether it was justifiable are questions requiring development beyond the pleadings. Defendants are cherry-picking allegations and drawing inferences against Plaintiff—the opposite of what a futility standard requires.

**E. Summary: Defendants Prove Amendment Is Proper**

Each of these arguments confirms that Defendants dispute material facts that cannot be resolved at the pleading stage. That is the definition of a case requiring amendment and discovery—not dismissal for futility.

Where, as here, the parties' briefing reveals factual disputes on matters including:

- the meaning and application of university policies;
- what various administrators knew and when;
- whether omissions or actions constitute "misrepresentation";
- whether reliance was reasonable;
- whether conduct was undertaken with fraudulent or conspiratorial intent; and
- whether administrative actions were appropriate under applicable policies;

those disputes confirm that amendment—not dismissal—is the appropriate procedural path.

## IV. THE SAC EASILY STATES PLAUSIBLE CLAIMS UNDER THE GOVERNING STANDARD

At the pleading stage, Plaintiff must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The SAC does so for each cause of action.

While Plaintiff will not preview discovery arguments or wholesale merits analysis here, the SAC alleges:

- specific actions and omissions by individual administrators;

- concrete misrepresentations and concealments;

- the timing and context of those statements;

- the causal connection to Plaintiff's injury; and

- the retaliatory nature of subsequent conduct.

These allegations are detailed, internally consistent, and supported by numerous contemporaneous documents referenced in the SAC. At this stage, that is more than sufficient.

## V. DEFENDANTS' DISPUTES ABOUT TAP 33, INTENT, AND ADMINISTRATIVE CONDUCT ARE NOT FUTILITY ARGUMENTS

Defendants devote substantial pages to challenging Plaintiff's interpretation of university policy and the alleged intent of individual administrators. But futility cannot be established by arguing that Plaintiff will ultimately be unable to prove his allegations. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

For example:

- competing readings of policy language present factual and legal questions outside the scope of a futility analysis;

- arguments about administrators' intent, knowledge, or motives are fact-intensive and inappropriate for resolution pre-discovery;

- disputes about the adequacy of supportive measures are merits issues governed by the Title IX framework, not Rule 15.

By raising these detailed factual disputes, Defendants confirm amendment is proper.

## VI. DEFENDANTS IDENTIFY NO PREJUDICE OR PROCEDURAL BAR

Defendants do not argue prejudice. They cannot: no discovery has begun, no scheduling order has been entered, and amendment will not delay proceedings. Amendment at this early stage is routine and expected.

## VII. LEAVE TO AMEND SHOULD BE GRANTED

Amendment will clarify the issues, focus the litigation, and allow the parties to proceed under a complete and accurate operative complaint. Because Defendants have not established futility—and because all other Rule 15 factors support amendment—the SAC should be accepted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Leave to File the Second Amended Complaint.

Respectfully submitted,

/s/ David Michael Mullins

David Michael Mullins

Pro Se Plaintiff

amodelcomplainant@gmail.com

Dated: December 15, 2025

# CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE TOOLS

I, David Michael Mullins, certify as follows:

## 1. Use of AI Tools

Artificial intelligence tools were used in the research and/or drafting of this filing.

The tools used were ChatGPT (OpenAI) and Claude (Anthropic).

## 2. Nature and Scope of Assistance

AI tools were used to assist with drafting, wording, organization, and editing.

During iterative drafting, these tools sometimes suggested phrasing for legal arguments or formulations of legal propositions.

## 3. Independent Legal Judgment

No legal argument, legal proposition, factual assertion, quotation, or citation appears in this filing unless I personally reviewed it and determined that it is accurate, legally sound, and supported by existing law or the record.

Any AI-suggested language was adopted only after my independent evaluation.

## 4. Identification of Portions Influenced by AI

AI tools were used at various stages of the drafting process, including phrasing assistance, structural editing, and stylistic refinement.

Specifically, AI tools were used to assist with phrasing and stylistic refinement in the substantive legal analysis portions of this filing, but were not used to generate citations, quotations, legal authorities, or factual assertions, all of which were independently researched, written, and verified by me.

Accordingly, AI influence may be present at the level of phrasing throughout the filing, but all substantive content—including legal arguments, authorities, quotations, and factual representations—reflects my own independent analysis, verification, and judgment.

## 5. Verification of Accuracy

I personally verified the accuracy of all quotations, citations, authorities, and factual statements contained in this filing.

## 6. Responsibility

I understand that I am solely responsible for this filing and for ensuring compliance with Federal Rule of Civil Procedure 11 and the Court's Order.

## 7. Good-Faith Certification

This certification reflects my reasonable, good-faith inquiry under Rule 11.

As with any human-drafted filing, inadvertent error is possible despite diligent review, but no such error is the result of reliance on unverified AI output.

Executed this 15th day of December, 2025.

/s/ David Michael Mullins

Plaintiff, pro se