IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID MULLINS,                          )
                                        )
    Plaintiff,                          )
                                        )
        v.                           )   **Civil No. 25-1366**
                                        )
DUQUESNE UNIVERSITY OF THE              )
HOLY SPIRIT, ALICIA SIMPSON,            )
ADAM WASILKO, ANNE                      )
MULLARKEY SAWA, and DANIEL              )
SELCER,                                 )
                                        )
    Defendants.                         )

**OPINION and ORDER**

Presently before the Court is Plaintiff David Mullins' Motion for Leave to File Second

Amended Complaint. ECF No. 30. Plaintiff seeks leave to file a Second Amended Complaint to

add a new defendant, Kristine Blair (Dean of McAnulty College and Graduate School of Liberal

Arts), and to add a fraud claim against Dr. Blair and a civil conspiracy claim against Dr. Blair

and current Defendant Daniel Selcer. Defendants filed a Response opposing amendment, to

which Mr. Mullins filed a Reply. ECF Nos. 34, 43. As explained below, the Motion will be

denied, because it would be futile to permit the claims set forth in the proposed second amended

complaint to proceed.

    **I.     Relevant Background**

        **A. Initial Complaints and Motion for TRO**

Plaintiff initially filed an eight-page Complaint against Defendant Duquesne University

of the Holy Spirit. Upon screening by the Court, the Complaint was dismissed for failure to state

a claim upon which relief can be granted. Plaintiff was given leave to file an amended complaint,

which he did. In his 109-page Amended Complaint, Plaintiff sues Duquesne University of the

Holy Spirit, Alicia Simpson (Title IX Coordinator), Adam Wasilko (Dean of Students), Anne Mullarkey Sawa (Executive Director of Student Conduct and Deputy Title IX Coordinator), and Daniel Selcer (Chair of the Department of Philosophy).

Plaintiff also filed a Motion for Temporary Restraining Order (TRO), in which he sought, among other things, a Court Order permitting him to attend his required graduate seminar, taught by Dr. Selcer, via videoconference. Dr. Selcer initially permitted Plaintiff to attend the seminar by video, but such video access was time limited. On October 15, 2025, the Court held a hearing on Plaintiff's request for a TRO. ECF No. 27. During the four-hour plus hearing, testimony was provided by Mr. Mullins, Ms. Simpson, and Dr. Selcer. Relevant to the present motion, Dr. Selcer testified on direct examination and he was cross-examined by Plaintiff. At the close of the hearing, the Motion for Temporary Restraining Order was denied.

### B. Post-TRO Hearing

The proposed second amended complaint is based upon a very limited set of factual allegations, occurring from October 20, 2025 to October 23, 2025. The allegations consist of four emails, a reported one-time consultation between Dr. Blair and Dr. Selcer, and Dr. Selcer's verbal attempt to interact with Plaintiff in person, on campus. Plaintiff initiated his email communications with Dr. Blair on October 20, 2025, and two days later, on October 22, 2025 at 8:35 a.m., Dr. Blair responded. Plaintiff replied to Dr. Blair at 9:58 a.m. that same day. Then, at 2:20 p.m. on October 22, 2025, Dr. Blair responded to Plaintiff's email. Each email is discussed below.

Five days after the TRO hearing, on October 20, 2025, Plaintiff "reported a conflict of interest to Dean Kristine L. Blair regarding Professor Daniel Selcer." Prop. Second Am. Compl. at ¶ 11 (ECF No. 33). Plaintiff explained his situation to Dr. Blair as follows:

2

> I wanted to make you aware of a conflict of interest affecting my required Ph.D. teaching seminar. The course is taught by Professor Dan Selcer, who is a named defendant in my ongoing federal civil case against Duquesne University. Because participation in this seminar is required for the Ph.D. program and discussion of Title IX compliance, I do not believe it's appropriate for me to remain enrolled under his instruction.

Email from Plaintiff to Blair, Oct. 20, 2025, Ex. K-1. Plaintiff then stated his request to Dr. Blair as follows:

> Could you please advise on a way to fulfill this [seminar] requirement through an alternate instructor or equivalent course? Until this is resolved, I'll refrain from attending to avoid any appearance of impropriety or further conflict.

*Id.*

Dr. Blair responded to Plaintiff two days later, on October 22, 2025. She prefaced her response by stating, "[i]n preparing my response to your query, I did need to consult Dr. Selcer as instructor to secure some additional details." Email from Blair to Plaintiff, Oct. 22, 2025, 8:35 a.m., Ex. K-2. Dr. Blair then explained to Plaintiff as follows:

> Both Dr. Selcer and I strongly concur that it is appropriate for you to remain enrolled in your required teaching seminar, which is only being taught by Dr. Selcer this semester. Dr. Selcer is committed to providing you with the same consideration and opportunities as any other student. He also will meet with you so that you can catch up on missed content on days that you were absent, and Director of Graduate Studies Lanei Rodemeyer will attend these meetings to the extent her schedule permits.

*Id.* Dr. Blair advised Plaintiff that he "should return to class today in order to complete the course with a passing grade, a requirement for your ability to teach in Fall 2026." *Id.* She also reported that Dr. Selcer had told her that Mr. Mullins had only attended three classes this semester and, consequently, he "will not pass should [he] not resume attendance." *Id.* Dr. Blair also identified "four required conditions impacting [Plaintiff's] standing in the course." *Id.* (schedule times to meet with Dr. Selcer to review missed content; complete all readings and submit missing prompts; plan to complete your syllabus, draft, critique, and revision; and deliver

3

your teaching demo). Dr. Blair then stated that, "Dr. Selcer is able to work with you on these requirements to foster your success in the course." *Id.* Finally, Dr. Blair explained to Plaintiff the consequences that would occur if he opted to withdraw from the seminar rather than remain under Dr. Selcer's instruction: "Should you choose to withdraw from the course, do note that you would be required to re-enroll in Fall 2026 along with your concurrent teaching assignment, and would be required to complete, based on cohort models, all activities for GTS1 and GTS2." *Id.*

Plaintiff replied to Dr. Blair the same day. In his reply, Plaintiff states that he learned that his October 20, 2025 email was "procedurally incorrect" and he had used "imprecise terminology." Prop. Second Am. Compl. at ¶ 12. Plaintiff alleges that his intent in sending the October 20, 2022 email to Dr. Blair was to report a conflict of interest to be referred for independent review, pursuant to a Duquesne University formal written policy. Such policies are formally titled, "The Administrative Policies," but are commonly referred to with the acronym, TAP. Plaintiff relies upon Duquesne University's policy titled as, "TAP No. 33: Conflict of Interest." This reply email was sent at 9:58 a.m., on October 22, 2025. Ex. K-3.

Plaintiff copied his October 22, 2025 reply email to three University officials, who served in positions identified within TAP No. 33 as having certain responsibilities. They are: Matthew Frist, Senior Vice President for Finance and Business; Reverend James P. McCloskey, C.S.Sp., University Secretary; and University President Ken Gormley. Plaintiff also copied the Office of Legal Affairs/General Counsel.[1] *Id.* In this email, Plaintiff objected to Dr. Blair's suggestion that he return to the seminar and work with Dr. Selcer to ensure he would complete the class. *Id.* He objected "on both policy and legal grounds." *Id.* He explicitly invoked Duquesne University's

---

[1] Plaintiff's October 22, 2025 email, sent at 9:58 a m., included a recipient Plaintiff did not mean to include, but he quickly sent another email to correctly identify the recipients he intended to receive the communication. The Court refers only to the corrected recipients, and only to the content of the 9:58 a.m. email. *Compare* Ex. K-3 with Ex. K-4.

TAP No. 33 policy and he identified TAP No. 33 violations that he believed existed as a result of his review of Dr. Blair's 8:35 a.m. response email. *Id.*

Plaintiff's email begins by explaining to Dr. Blair that his initial email was a formal TAP No. 33 disclosure, stating:

> My October 20 email constituted a formal conflict-of-interest disclosure under TAP No. 33 § IV.2, which states that "when a Covered Party is made aware of a potential conflict of interest throughout the year, they must immediately disclose the potential conflict and all relevant facts." I disclosed that Professor Selcer is a named defendant in my active federal civil case and that I cross-examined him under oath one week ago.[2]

*Id.* Plaintiff also cites § IV.4 of TAP No. 33, which states that, "Potential conflicts of interest that are disclosed... will be reviewed by the Senior Vice President for Finance and Business [Matthew Frist] or their designee and/or external investigators to determine the appropriate, situation-specific plan designed to manage, reduce, or eliminate the conflict." *Id.* Next, relying upon TAP No. 33 and his initial email, Plaintiff identified the TAP No. 33 violations evident from her email:

> Instead of the required independent review by those designated officials, you consulted with Professor Selcer himself—the conflicted party—and jointly concluded there is no conflict. By bypassing that review and consulting the conflicted party directly, the University failed to comply with the conflict-management procedures mandated by TAP 33.

*Id.* Plaintiff therefore requested "that this matter be referred to [one of the TAP No. 33 officials] for independent review in accordance with TAP No. 33." *Id.* He then confirmed that he "copied the officials explicitly designated by [the TAP No. 33] policy to receive and review conflict-of-interest disclosures," as well as the Office of General Counsel. *Id.*

---

[2] Though not critical to resolution of Plaintiff's Motion, Plaintiff did not inform Dr. Blair in his initial email that he had cross-examined Dr. Selcer.

5

At 2:29 p.m., on October 22, 2025, Dr. Blair responded to Plaintiff. Ex. K-5. Dr. Blair

copied Mr. Frist on her email. She stated:

> Please be advised that TAP 33 does not apply to this situation. First, as a student
> you are not a "Covered Party" as defined by TAP 33. Second, the scenario,
> including Dr. Selcer continuing to serve as your instructor, does not fall within the
> limited definition of a "Conflict of Interest" in TAP 33.
>
> As such, there is no change to the email that I sent to you this morning at 8:35
> a.m.

*Id.* Plaintiff did not reply to this email.

### C.  Additional Allegations

In addition, in his proposed amended complaint, Plaintiff alleges that Dr. Blair made

incorrect statements in her second October 22, 2025 email, as follows:

> Both [of Dr. Blair's] grounds directly contradict TAP No. 33's plain language.
> Section IV.3 explicitly authorizes "any member of the University community" to
> report conflicts—the policy does not limit reporting to Covered Parties. And a
> faculty member grading a plaintiff suing him for personal damages seven days
> after being cross-examined under oath obviously constitutes a conflict under any
> reasonable interpretation.

Prop. Second Am. Compl. at ¶¶ 16, 72, 342. He alleges that Dr. Blair had "no authority under

TAP No. 33 to receive or adjudicate conflict reports." *Id.* at ¶ 58. Plaintiff also explains that, in

his second October 22, 2025 email he mistakenly referred to himself as a "Covered Party" under

TAP No. 33, but he now understands that he is not a "Covered Party." *Id.* Instead, he alleges that,

under Tap No. 33, he qualifies as a University community member who is permitted to report Dr

Selcer's conflict of interest. *Id.* at ¶¶ 58, 60. He also presents his understanding of how TAP No.

33 works, how it should work, and how Dr. Blair should have taken different action under TAP

No. 33 in response to Plaintiff's initial email request. *Id.* at ¶¶ 61-62. In particular, Plaintiff

alleges that, once a conflict is reported, TAP No. 33 mandates specific review procedures, to

include review by the Senior Vice President for Finance and Business (Matthew Frist), their

6

designee, or an external investigator. *Id.* at 61. Plaintiff next alleges that, "upon receiving

Plaintiff's October 20, 2025 report– even though improperly directed to her," Dr. Blair had a

duty to:

> acknowledge receipt; inform Plaintiff of the proper TAP No. 33 designated
> reviewers; immediately refer the matter to Frist or other designated officials for
> mandatory independent review; and implement interim protective measures
> (alternative arrangements, temporary reassignment) pending independent review.

*Id.* at ¶ 62. Plaintiff then alleges how Dr. Blair's actions were indicative of fraud and conspiracy.

*Id.* at ¶¶ 63-66 (and elsewhere). Plaintiff also alleges that Dr. Blair's October 22, 2025 8:35 a.m.

email was a "directive," issued under threat of a failing grade and loss of Fall 2026 teaching

ability, that "required" Plaintiff to return to Dr. Selcer's class immediately and to meet with him

privately. *Id.* at ¶ 66.

In addition, Plaintiff includes allegations, interpreting his own October 22, 2025 9:58

a.m. reply email. He alleges that said email was "correcting his initial procedural error;"

identifying the "proper designated reviewers by name and title;" citing TAP No. 33 policy

provisions; and objecting to Dr. Blair's "procedural violations." *Id.* at 67. Plaintiff further alleges

that his reply email "properly invoke[ed] the community reporting mechanism under Section

IV.3 and request[ed] the mandatory independent review under Section IV.4." *Id.* Thus, he alleges

that his reply email "corrected any ambiguity from his initial October 20th email and made

clear" that TAP No. 33 authorizes a member of the University to report a conflict, which he did.

*Id.* at ¶ 68.

Plaintiff also acknowledged that Dr. Blair copied Matthew Frist, "the very official TAP

No. 33 designates to conduct independent conflict reviews." *Id.* at  69. Plaintiff alleges that, even

though Dr. Blair copied Mr. Frist on the email, she failed to refer the matter to Mr. Frist for the

required TAP No. 33 independent review. *Id.* at ¶ 70. Plaintiff further alleges that, through her

email, Dr. Blair "informed Frist of her unilateral determination" that TAP No. 33 does not apply and that her initial response remains the same. *Id.* Plaintiff alleges that Mr. Frist justifiably relied upon Dr. Blair's statements *Id.* at ¶ 345.

Finally, Plaintiff alleges that on October 23, 2025, he attended Dr. Selcer's graduate seminar. *Id.* at ¶ 76. He further alleges that after the seminar ended, Dr. Selcer approached Plaintiff on campus and initiated a conversation. *Id.* at ¶ 78. Plaintiff stated to Dr. Selcer that he did not want to talk, and he walked away. *Id.* Dr. Selcer called after him and said, "we need to set something up." *Id.*

The remainder of the newly proposed allegations of the second amended complaint continue to build upon, or repeat, previous factual allegations or consist of allegations that are not factual averments but are conclusory interpretations of the alleged facts, interpretations of law and policy, consisting of unsupported conclusions, argument, unwarranted inferences, and legal conclusions. Plaintiff also proposes edits and/or additions to several paragraphs of his current Amended Complaint that are not being considered in resolving Plaintiff's Motion, because such proposals do not relate to the new claims and are not separately argued for in Plaintiff's Motion. Plaintiff's proposed edits and additions include "integration of factual developments from the October 15, 2025 temporary restraining order hearing, including cross-examination of Defendant Selcer." Prop. Second Am. Compl. at 2. The record of the TRO hearing, including cross-examination of Dr, Selcer, is a part of the record in this case.

The content, understanding, and application of Duquesne University's "The Administrative Polices" (TAP), is vital to Plaintiff's proposed new claims. Duquesne University currently has sixty-five published "University Policies."

> A University Policy is an official directive, approved by the President based on
> the recommendation of the Executive Officers (Vice Presidents), that has broad

8

and direct application across all schools, departments, and other administrative units of the University. A University Policy has historically been known as a TAP, and will hereinafter be referred to as a TAP (collectively, the TAPs)."[3]

TAP No. 33, is titled, "Conflict of Interest," and the University places it in the "Human Resources" category. *See* "TAPs by Category."[4] The "scope" of TAP No. 33[5] is stated as follows: "This policy applies to all Duquesne University employees. It also applies to Board Members, including University Advisory Board members."

TAP No. 33's "Policy" is defined in Section I, as follows:

Those persons employed by the University or who serve as members of the Board of Directors or Advisory Board members (a "Covered Party" or "Covered Parties") must not permit their personal interests to conflict, or appear to conflict, with the interests of the University. The University must be fully informed with respect to any financial or other interests that a Covered Party may have in any person, firm, or entity with which the University does business, so that any conflicts or potential conflicts can be managed, reduced, or eliminated. Covered Parties are required to comply with the procedures and guidelines for avoidance of conflict of interest as set forth below, to disclose conflicts or potential conflicts, and to adhere to conflict management directives from the University. Further, University resources may not be used for personal gain.

The definition of a conflict of interest under TAP No. 33 is as follows:

### II. CONFLICT OF INTEREST DEFINITION

Conflicts of interest occur when a Covered Party is in a position to influence a decision, such as a policy, strategy, or purchase, where the Covered Party might directly or indirectly receive financial or other substantial personal benefit or give improper advantage to family members or associates. Such conflicts may arise out of, but are not limited to:

- Business or financial relationships between the University and a Covered Party or a Covered Party's family member;
- Business or financial relationships between the University and an entity with which a Covered Party or Covered Party's family member is affiliated;

---

[3] https://www.duq.edu/about/policies-and-initiatives/the-administrative-policies/index.php

[4] https://www.duq.edu/about/policies-and-initiatives/the-administrative-policies/index.php#category

[5] https://www.duq.edu/about/policies-and-initiatives/the-administrative-policies/tap-33.php

- Service to another entity or organization whose interests are adverse or in conflict with the University; and/or
- Use of University resources, and/or a University position or influence, to advance personal interests or interests of a family member.

Tap No. 33, § II. As to reporting potential violations of TAP No. 33, Section IV.c. states:

> Any member of the University community who discovers events or circumstances that appear to be in violation of this policy should promptly report their discovery to the appropriate Vice President, Secretary of the University, or President.

Tap No. 33, § IV.c. TAP No. 33 does not mention classes, classrooms, seminars, or professor-student conflicts. The only reference to a Duquesne University "student" within TAP No. 33 appears under "V. Related Information," which lists five "related" TAPS, including "TAP No. 46: Commercial Entities – Faculty, Staff and *Student* Participation."[6] This section also cites as "related information," the Faculty Handbook, the University Bylaws, and Investment Office policies.

## II.    Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15 governs amended pleadings. If a party is not seeking to amend its pleading as a matter of course pursuant to Rule 15(a)(1), then a party may only amend its pleading either by first obtaining the opposing party's permission or by seeking leave of court. Fed. R. Civ. Proc. 15(a)(2). This liberally interpreted rule instructs that "[t]he court should feely give leave when justice so requires." *Id.* In *Foman v. Davis*, the United States Supreme Court stated as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

---

[6] *Id.*

371 U.S. 178, 182 (1962). The United States Court of Appeals for the Third Circuit has applied *Foman* in a manner that denies leave only when the specific and enumerated factors identified by the Supreme Court give rise to injustice towards the opposing party. *Arthur v. Maersk, Inc.,* 434 F.3d 196, 203 (3d Cir. 2006). Thus, although Rule 15(a) directs the court to allow an amendment "when justice so requires," a court must deny leave when an amendment is futile or results in undue delay or prejudice. *Foman*, 371 U.S. at 182. A simple claim of prejudice is insufficient grounds for denial; instead, the non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989).

### A.    Futility/Failure to State a Claim upon Which Relief Can be Granted

The dispute here concerns whether the proposed amended claims are futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). "A district court may therefore 'properly deny leave to amend where the amendment would not withstand a motion to dismiss.'" *Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014) (quoting *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989). In making this determination, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009). A plaintiff's legal conclusions are not entitled to deference, and the court is "not bound to accept as true a legal conclusion couched as a factual

11

allegation." *Papasan v. Allain*, 478 U.S. 265, 286, (1986). In addition to not accepting legal

conclusions cast as factual averments, a court need not credit bald assertions or unwarranted

inferences. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997).

### B.    Leave to Amend

When a court grants a motion to dismiss, or in this case, if the court denies a motion to

amend complaint based upon futility, the court "must permit a curative amendment unless such

an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP,* 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further,

amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair

prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is

futile "where an amended complaint 'would fail to state a claim upon which relief could be

granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015)

(quoting *Great W. Mining*, 615 F.3d at 175).

### C.    Documents Permitted to Be Considered

A court may "consider documents integral to or explicitly relied upon in the complaint or

any undisputedly authentic document that a defendant attaches as an exhibit to a motion to

dismiss if the plaintiff's claims are based on the document."  *In re Asbestos Prods. Liab.Litig.*

*(No. VI)*, 822 F.3d 125, 133 n. 7 (3d Cir. 2016). A "court may judicially notice a fact that is not

subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b)." *Sturgeon v. Pharmerica Corp.,* 438 F. Supp.

3d 246, 257 (E.D. Pa. 2020).

12

Here, the Court may consider the email exchanges between Plaintiff and Dr. Blair that Plaintiff has attached as exhibits to his Motion. Such emails are obviously integral to Plaintiff's proposed second amended complaint. Similarly, Duquesne University's Policies are also properly considered, as the Policies are integral to Plaintiff's proposed amendments and TAP No. 33 is explicitly relied upon by Plaintiff. In addition, Defendants have attached a copy of TAP No. 33 to their opposition brief.

## III.    Discussion

The conduct giving rise to the new claims in the proposed amended complaint occurred from October 20 to October 23, 2025, and consists of the four emails exchanged between Plaintiff and Dr. Blair, Dr. Blair 's report that she met with Dr. Selcer in response to Plaintiff's request, and Plaintiff's allegation that Dr. Selcer approached him on campus on October 23, 2025. From these new alleged facts, Plaintiff proposes two new claims:

(i)    A Fraud Claim alleging that Dr. Blair falsely represented the TAP No. 33 conflict of interest policy (Prop. Second Am. Compl at ¶¶ 167-168, 326-358); and

(ii)    a Conspiracy Claim alleging that Dr. Blair conspired with Dr. Selcer to bypass mandatory conflict-of-interest review procedures under TAP No. 33 (Prop. Second Am. Compl at ¶¶ 408-426).

In opposition to Plaintiff's Motion, Defendants argue that the proposed amendments are futile, as they fail to plausibly state a valid claim. In Reply, Plaintiff argues that it is premature to make such a futility determination and that Defendants' argument requires impermissible factfinding and credibility determinations. As explained in detail below, Plaintiff has failed to plead facts to satisfy all necessary elements to validly state either a fraud claim or a civil conspiracy claim upon which relief can be granted.

13

### A.  Allegations that Need Not Be Credited

In considering whether a proposed amended complaint is futile, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir.2002). Similarly, a court will not accept a plaintiff's legal arguments set forth as factual allegations. Plaintiff's red-lined proposed second amended complaint consists of 439 paragraphs in 148 pages, with the last fourteen pages setting forth Plaintiff's prayer for relief. Notably, a significant number of Plaintiff's allegations include extraneous language, which is permitted, but not necessary, in a complaint. Thus, Plaintiff includes multiple explanations of facts already alleged; he makes unsupported inferences from his factual allegations; he provides his personal interpretations of the parties' statements; he provides legal arguments and reaches legal conclusions regarding relationships, documents, policy, and applicable law; he renders conclusory statements as to what a party's words or actions mean; and he provides argument in favor of his preferred outcomes. It would be improper to consider such allegations in undertaking a futility analysis; thus, the Court will not credit such allegations. The specific allegations that are not worthy of credit, are identified within the following discussion.

### B.  Plaintiff's Conflict of Interest Scenario Under TAP No. 33

Before addressing Plaintiff's proposed new claims, Plaintiff's allegation, that his conflict of interest concerning Dr. Selcer fits within TAP No. 33, requires analysis. In support, Plaintiff cites a phrase from the *Policy Section* of TAP No. 33, which states that Covered Parties "must not permit their personal interests to conflict, or appear to conflict, with the interests of the University." TAP No. 33 § I; *see also* Ex. K-3 and Prop. Second Am. Compl. at ¶¶ 73, 342. This definition does not apply to the present factual allegations. Plaintiff does not allege that Dr.

14

Selcer's personal interests conflict, or appear to conflict, with the interests of *the University*. In addition, the actual definition of a TAP No. 33 conflict of interest, with "Dr. Selcer" substituted for "Covered Party," is as follows:

> Conflicts of interest occur when [**Dr. Selcer**] is in a position to influence a decision, such as *a policy, strategy, or purchase*, where [**Dr. Selcer**] might directly or indirectly receive financial or other substantial personal benefit or give improper advantage to family members or associates. Such conflicts may arise out of, but are not limited to:
>
> - Business or financial relationships between the University and [**Dr. Selcer**] or [**Dr. Selcer's**] family member;
> - Business or financial relationships between the University and an entity with which [**Dr. Selcer**] or [**Dr. Selcer's**] family member is affiliated;
> - Service to another entity or organization whose interests are adverse or in conflict with the University; and/or
> - Use of University resources, and/or a University position or influence, to advance personal interests or interests of a family member.

Tap No. 33, § II (emphasis added). Plaintiff 's alleged conflict of interest -- that Dr. Selcer  may not fairly evaluate Plaintiff because Plaintiff is suing Dr. Selcer – does not involve Dr. Selcer influencing a *policy* decision, a *strategy* decision, or a *purchase* decision of the University. The four listed categories of possible conflicts of interest also do not encompass the conflict asseted by Plaintiff.

The above TAP No. 33 conflict of interest definitions cannot be said to include "professor-student conflicts" that arise from a student suing a professor who is teaching a class the student attends. The term "student" only appears in TAP No. 33 in sections unrelated to defining, explaining, or otherwise substantially addressing, covered conflicts of interest. Specific to this case, in light of TAP No. 33's language, which lacks any meaningful reference to any professor/student conflict of interest, TAP No. 33 does not apply. Therefore, because TAP No. 33 does not apply to the professor/student conflict of interest asserted by Plaintiff, and because

15

both of Plaintiff's claims are premised on Plaintiff's conflict falling within the TAP No. 33

definition, Plaintiff's claims are not viable.

### C. Fraud Claims

Plaintiff proposes to amend his complaint by adding, what he terms, a Fraud "pattern"

claim, against Dr. Blair. To state a claim for fraud, Plaintiff must plead, with particularity, "(1) a

representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge

of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading

another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting

injury was proximately caused by the reliance." *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa.

Super. 2014). As discussed below, Plaintiff is unable to state a fraud claim upon which relief can

be granted, because Dr. Blair did not make a false representation. Plaintiff alleges that Dr. Blair

made six false representations in her two emails.

### 1. Dr. Blair's First Email (October 22, 2025 8:35 a.m.)

Plaintiff alleges that Dr. Blair made the following false statements in her 8:35 a.m.

October 22, 2025 email.

1. Dr. Blair represented to Plaintiff that her consultation with Dr. Selcer satisfied **TAP No. 33's** review requirements.

2. Dr. Blair's statement that, "both Dr. Selcer and I strongly concur," which Plaintiff states is a false representation that Dr. Blair's "concurrence jointly with Defendant Selcer constituted proper determination of the conflict issue," under **TAP No. 33,** which vests conflict review authority in designated officials.

3. Dr. Blair concealed that she had, "bypassed [**TAP No. 33**] mandatory procedures; consulted with the conflicted party instead of independent reviewers; made a determination she had no authority to make, and failed to refer the matter to designated reviewers (Frist, McCloskey, and the President)," which made others reasonably believe she followed **TAP No. 33** procedures and conducted a proper review.

Prop. Second Am. Compl. at ¶ 337 (bold added).

Dr. Blair's first email is a direct response to Plaintiff's initial, straightforward, unambiguous, email which did not mention TAP No. 33, either expressly or implicitly. In his initial email, Plaintiff referenced a conflict of interest "affecting [his] required Ph.D. teaching seminar," that arose out of the fact that Dr. Selcer is a named defendant in litigation initiated by Plaintiff. He stated his belief that it is not appropriate for him to remain in the seminar under Dr. Selcer's instruction. He then made a specific and clear request that Dr. Blair advise him on how he could fulfill the seminar requirement, possibly with an alternate instructor or with an equivalent seminar. Plaintiff did not request a conflict review, nor did he request that Dr. Blair refer the matter to any designated TAP No. 33 reviewers.

Plaintiff argues that Dr. Blair's alleged false representations are sufficient to meet the falsity element, because Dr. Blair should have assumed from Plaintiff's initial email, that Plaintiff was actually invoking TAP No. 33. He alleges that, after reviewing the initial email request, Dr. Blair should have

> inform[ed] Plaintiff of the proper TAP No. 33 designated reviewers; immediately refer[red] the matter to Frist or other designated officials for mandatory independent review; and implement[ed] interim protective measures (alternative arrangements, temporary reassignment) pending independent review.

*Id.* at ¶ 62. Plaintiff includes similar sounding proposed allegations throughout his proposed second amended complaint, stating, in one way or another, that Dr. Blair knew or should have known that Plaintiff was invoking TAP No. 33 in his initial email. Such conclusions are patently unreasonable based upon a plain four-corners review of both emails. It is indisputable that Plaintiff's initial October 20, 2025 email contains no language, or implied language, upon which one could reasonably conclude that Dr. Blair should have known or assumed that Plaintiff was requesting action pursuant to TAP No. 33. Plaintiff's *belief* about what his first email means, in contradiction to the actual text of his email, is a conclusion that will not be credited. Plaintiff

17

makes no other allegations that could plausibly support his allegations of fraudulent statements in Dr. Blair's first email. The Court will not credit Plaintiff's proposed allegations that rely upon, or attempt to build upon, his assumption that Dr. Blair should have responded to Plaintiff's first email as though it had invoked TAP No. 33. Because Plaintiff did not expressly or implicitly invoke TAP No. 33 in his initial email, Dr. Blair did not refer to TAP No. 33 in her responsive email in any capacity. She also did not *decline* to refer the matter for review, because Plaintiff did not *request* a referral at all, much less any TAP No. 33 referral. Because TAP No. 33 was not invoked or mentioned by Plaintiff, and where Dr. Blair did not refer to TAP No. 33 in her response, Dr. Blair did not make any false representation about TAP No. 33 in her October 22, 2025 8:35 a.m. email.

Next, as to the first alleged misrepresentation, Dr. Blair did not represent, much less falsely represent, that her consultation with Dr. Selcer satisfied TAP No. 33's review requirements. She made no implicit or explicit representation concerning TAP No. 33 when referring to her consultation with Dr. Selcer. All she said was that she "did need to consult Dr. Selcer as instructor to secure some additional details." Thus, Plaintiff's first alleged false representation is not a false representation.

Similarly, there is no false representation, or implied false representation, in Dr. Blair's statement that, "both Dr. Selcer and I strongly concur" as to the proposed resolution. Again, because there is no reference, or implied reference, to TAP No. 33 in either Plaintiff's email request or Dr. Blair's response, Dr. Blair did not utter any representation, much less a false representation, that her consultation with Dr. Selcer constituted a proper determination of Plaintiff's conflict issue, in contravention of TAP No. 33, which vests conflict review authority in designated officials.

18

Finally, Dr. Blair did not intentionally conceal from Plaintiff that she had violated TAP No. 33 procedures, because TAP No. 33 was not a subject of Plaintiff's email request and because Dr. Blair did not address TAP No. 33 in her response. Accordingly, Dr. Blair did not, and could not, bypass TAP No. 33 mandatory procedures, fail to consult with TAP No. 33 independent reviewers, render a determination under TAP No. 33 where she had no authority, or fail to refer the matter to TAP No. 33 designated reviewers.

Accordingly, the Court concludes that Dr. Blair did not make any false representations to successfully state a fraud claim upon which relief can be granted. As such, Plaintiff's fraud claim as regards Dr. Blair's first email fails.

### *Justifiable Reliance*

In addition to Plaintiff's claim failing to establish false representation, Plaintiff is also unable to establish that he justifiably relied upon the statements he alleges were false and were contained within the first email. A fraud claim requires the party claiming to be defrauded to have justifiably relied upon a false statement. *Drelles*, 881 A.2d at 840. For reliance upon another's representation to be justifiable, it must be reasonable. *Porreco v. Porreco*, 811 **A.**2d 566, 571 (Pa. 2002). In making this determination, a court considers whether the recipient of the alleged misrepresentation, "knew or should have known that the information supplied was false." *Fort Wash. Res., Inc. v. Tannen*, 858 F. Supp. 455, 460 (E.D. Pa. 1994) (citing *Scaife Co. v. Rockwell-Standard Corp.*, 446 A.2d 280, 286–88 (Pa. 1971)). Courts also consider factors such as the relationship of the parties, the degree of the parties' sophistication, the nature of the transaction, and the history of the parties' negotiations in determining whether the reliance was reasonable. *See Fort Wash. Res., Inc*., 858 F. Supp. at 460; *Huu Nam Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 135 (3d Cir. 2005). As the Pennsylvania Superior Court explained,

19

> "although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."

*Kline v. EDS Relocation & Assignment Servs.*, No. 1:CV-08-0980, 2008 WL 4822026, at *6 (M.D. Pa. Nov. 4, 2008) (quoting *Toy v. Metropolitan Life Insurance Company*. 863 A.2d 1, 12 (Pa. Super. Ct. 2004)).

Whether justifiable reliance exists is "ordinarily a question of fact." *Kirwin v. Sussman Auto.*, 2016 PA Super 222, 149 A.3d 333, 337 (2016) (summary judgment finding that plaintiffs failed to "present even a basic set of facts tending to show reliance"). Here, however, Plaintiff's allegations alone demonstrate that he did not justifiably rely upon any of the alleged false statements in Dr. Blair's first email. Plaintiff alleges that he concluded, immediately, that Dr. Blair was issuing false statements and implied false statements in her emails. Prop. Second Am. Compl. ¶ 345 ("Plaintiff immediately recognized that Blair's interpretation [in her first email] violated TAP No 33's plain language and [Plaintiff] objected with specific policy citations in his October 22, 2025 9:58 AM response"). Plaintiff's pleadings concerning these statements that he had concluded were false is fatal to his fraud claim.

Plaintiff also alleges that, as a general matter, "[r]eliance in fraud does not require that plaintiff believe the representation is true—it requires that the false representation cause plaintiff to act (or refrain from acting) to his detriment." Prop. Second Am. Compl. ¶ 345. Plaintiff does not provide any legal support for this proposition. Pennsylvania law is to the contrary: the "recipient of an allegedly fraudulent misrepresentation . . . is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious." *Patel v. Kandola Real Est.*, LP, 2021 PA Super 219, 271 A.3d 421, 427 (2021)

(quoting *Toy*, 928 A.2d at 207). As discussed, Plaintiff's proposed amended complaint admits that he had concluded that the misrepresentations, that he allege were made, were false; and thus, his alleged reliance is not justifiable.

Further, Plaintiff alleges and argues, that his reliance was justifiable despite his knowledge of the falsity of the statements, because he was "forced to rely on Blair's positional authority as Dean when she issued a directive threatening academic failure," such as failing grade and loss of teaching eligibility. Prop. Second Am. Compl. ¶¶ 76, 345. For a fraud claim, allegations that imply a plaintiff's reliance was *coerced* is not *justified* reliance where the plaintiff alleges that he concluded that the representation was false. *Drelles*, 881 A.2d at 840 (quoting Restatement (Second) of Torts § 541) (Representation Known to Be or Obviously False).

Accordingly, Plaintiff cannot establish the element of justifiable reliance for his fraud claims, based upon Dr. Blair's first email, because he admits he had concluded that the statements were false. Therefore, his fraud claim as to Dr. Blair's first October 22, 2025 email fails.

### 2. Dr. Blair's Second Email (October 22, 2025 2:20 p.m.)

Plaintiff alleges that Dr. Blair made the following false statements in her 2:20 p.m. October 22, 2025 email:

4. Dr. Blair falsely represented that "'**TAP 33** does not apply to this situation' because students are not 'Covered Parties.'"

5. Dr. Blair's statement that the "scenario does not fall within the limited definition of 'Conflict of Interest," within **TAP No. 33**, which Plaintiff alleges is a false representation that "no conflict exists."

6. Dr. Blair's false, implied, representations, directed to Mr. Frist, that TAP 33 does not apply to the situation and that there was no change to Dr. Blair's earlier recommended solution. Plaintiff alleges that these statements gave the appearance

that Mr. Frist was involved, while actually bypassing his **TAP No. 33** review authority.

*Id.* at ¶ 342 (bold added).

Dr. Blair's second email is in response to Plaintiff's October 22, 2025 9:58 a.m. reply email wherein he first cited TAP No. 33. Plaintiff's second email is, in large part, based upon Plaintiff's allegation, that his initial October 20, 2025 email was a formal request pursuant to TAP No. 33. However, as discussed above, Plaintiff's first email did not mention TAP No. 33. In his second email. Plaintiff states: "I disclosed [in the first email] that Professor Selcer is a named defendant in my active federal civil case and that I cross-examined him under oath one week ago." Ex. K-3. The remainder of Plaintiff's email continues under Plaintiff's assumption that he had properly invoked TAP No. 33 in his first email to Dr. Blair. Thus, he summarily accuses Dr. Blair of bypassing a TAP No. 33 § IV.4 review, and concludes that, as a result, the "University failed to comply with the conflict-management procedures mandated by TAP 33." Ex. K-3. Notwithstanding that Plaintiff does not allege that Dr. Blair had any prior knowledge of Plaintiff's intent to invoke TAP No. 33 in his first email, Plaintiff's second email formally requested "that this matter be referred to the Senior Vice President for Finance and Business, the Secretary of the University, or the President for independent review in accordance with TAP No. 33." Ex. K-3. Plaintiff also copied said designated parties in his email.

In Dr. Blair's concise response, she advised Plaintiff, "that TAP 33 does not apply to this situation." She offered two reasons supporting this conclusion. First, that Plaintiff, as a student, was "not a 'Covered Party' as defined by TAP 33," and second, that Plaintiff's reported conflict with Dr. Selcer, "does not fall within the limited definition of a 'Conflict of Interest' in TAP 33." Dr. Blair then informed Plaintiff that there would be no change to her previous email.

22

In support of his claims for fraud, regarding the fourth and fifth fraudulent statements within said email, Plaintiff alleges that Dr. Blair made statements that she did not make, and then Plaintiff alleges that said alleged statements were false. First, Dr. Blair stated that students are not "Covered Parties." Plaintiff recasts these words from Dr. Blair and alleges that Dr. Blair stated that "students cannot report conflicts under TAP No. 33." Dr. Blair's email did not state, suggest, or imply, that students cannot report TAP No. 33 conflicts.[7] As regards this fourth alleged statement, Plaintiff has not alleged that Dr. Blair uttered the words as Plaintiff alleges; thus, there was no false statement and no sufficient allegation of fact to support Plaintiff's fraud claim.

Plaintiff next alleges that Dr. Blair falsely implied that "no conflict exists" as to Plaintiff's report of a conflict of interest involving Dr. Selcer. Plaintiff alleges that Dr. Blair falsely implied that,'

> a faculty member grading a plaintiff who is suing him for fraud and conspiracy in federal court seven days after being cross-examined under oath does not constitute a conflict of interest.

Prop. Second Am. Compl. at ¶ 73. Plaintiff comments that such a statement is "facially absurd." *Id.* Plaintiff's conclusory allegations about Dr. Blair's second email are contradicted by the email itself. Plaintiff's allegations are not reasonable assumptions or interpretations from the actual wording within Dr. Blair's email. Dr. Blair's actual words, "the scenario, including Dr. Selcer continuing to serve as your instructor, does not fall within the *limited definition of a 'Conflict of Interest' in TAP 33*." Ex. K-5 (emphasis added). Dr. Blair did not state, or imply, that "no

---

[7] In his second email, replying to Dr. Blair's responsive email, Plaintiff erroneously told Dr. Blair that he was a TAP No. 33 "Covered Party." Dr. Blair corrected Plaintiff's statement. Plaintiff admits that he made a mistake and that students are, in fact, *not* "Covered Parties." See Ex. K-3; Prop. Second Amended Comp. at ¶ 58 ("Plaintiff used imprecise terminology, referring to his own status as a 'Covered Party'"). Thus, Dr. Blair did not make a false representation that students are not permitted to make TAP No. 33 reports, as that topic was not raised in any of the emails. The allegation is unsupported and contrary to the actual text of Dr. Blair's email.

conflict exists." Her statement is narrow, and explicitly focused upon the definition of "Conflict of Interest" as defined in TAP No. 33. Plaintiff's allegation, that Dr. Blair determined that the scenario raised by Plaintiff "does not constitute a conflict of interest," is an unwarranted inference from the text of her email that will not be credited. Thus, Plaintiff's alleged fifth false representation is not, in fact, a false representation; and thus, does not support his fraud claim.

Further, Plaintiff is unable to plausibly allege that he justifiably relied upon either the fourth or fifth false statement, for the reasons discussed above in that Plaintiff admits that he had concluded that the statements were false.

Next, Plaintiff alleges that Dr. Blair's sixth statement within her second October 22, 2025 email includes both false representations and implied false representations, made to Mr. Frist, by way of Dr. Blair copying Mr. Frist on her second email. Plaintiff argues that said email falsely represented to Mr. Frist, the following statements:

- that the matter was being handled properly,
- that Dr. Blair had reviewed the TAP No. 33 policy and determined it did not apply to student reports, and
- that no independent review (by Frist or others) was necessary.

Prop. Second Am. Compl. at ¶¶ 344-345.

Plaintiff's alleged false representations and implied false representations are contradicted by Dr. Blair's actual email. First, Dr. Blair did not represent or imply that the "matter was being handled properly," those are Plaintiff's words. Dr. Blair merely provided a response to Plaintiff's email, which confirmed that her initial recommendation was not changed. Second, as already discussed, Dr. Blair's email did not contain any false statements.

Further, Plaintiff alleges that Dr. Blair's sixth statement supports an implied false representation. As alleged by Plaintiff, the crux of the sixth false representation is that Dr. Blair copied, but did not consult with, Mr. Frist, and that Dr Blair, "announced her final determination

24

[by copy to Dr. Frist]: 'Please be advised that TAP 33 does not apply . . . there is no change.'" Prop. Second Am. Compl. ¶ 342. Plaintiff alleges that this statement, "created the false appearance that Frist was being properly involved while actually bypassing his review authority." *Id.* Plaintiff's interpretation that Dr. Blair's sixth statement falsely represented to Mr. Frist, (by virtue of him being copied on the email to Plaintiff) that TAP No. 33 did not apply and that no "independent review" was necessary, does not support Plaintiff's fraud claim.

Accordingly, Plaintiff's claim of fraud, as regards statement number six of Dr. Blair's second email, fails.

### D. Civil Conspiracy

Finally, Plaintiff proposes to add a claim of civil conspiracy against Dr. Blair and Dr. Selcer. The elements of a civil conspiracy are: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008). "Proof of malice, *i.e.*, an intent to injure, is essential in proof of a conspiracy." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

Plaintiff alleges a conspiracy between Dr. Blair and Dr. Selcer to unlawfully bypass TAP No. 33 conflict of interest procedures during litigation. Prop. Second Am. Compl. at 121-130 (¶¶ 408-426). He describes their agreement as follows: "On or about October 20-23, 2025, Defendants Kristine Blair and Daniel Selcer agreed to coordinate and act jointly to unlawfully bypass TAP No. 33's mandatory conflict-of-interest procedures, thereby denying Plaintiff the independent review the policy guarantees when conflicts are reported." Prop. Second Am. Compl. at ¶ 409.

25

All six alleged false representations concern statements about TAP No 33. The third and sixth alleged false representations are specifically relevant to Plaintiff's claim that there was a conspiracy to bypass TAP No. 33 procedures. The third alleged false statement is that Dr. Blair concealed that she had bypassed TAP No. 33 procedures. The sixth alleged false representation is that Dr. Blair falsely implied that TAP No. 33 does not apply to the situation, which enabled bypassing TAP No. 33 review authority. Again, as noted, none of Dr. Blair's alleged false email statements are actually false.

"'[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'" *Phillips*, 959 A.2d at 437 (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa.Super.2000)). As discussed above, Plaintiff is unable to sustain any of his proposed fraud claims against Dr. Blair, as he cannot plausibly allege that Dr. Blair made or implied any false representation with respect to TAP No. 33. Specific to Plaintiff's conspiracy claim, he cannot sustain any fraud claim based upon alleged false and/or implied representations that Dr. Blair bypassed TAP No. 33 mandatory procedures (third statement), that TAP No. 33 did not apply to the situation (sixth statement), and that a TAP No. 33 independent review was not necessary (sixth statement). Because Plaintiff is unable to establish any fraud claim, "no predicate cause of action exists upon which [Plaintiff] may assert claims for civil conspiracy." *Phillips*, 959 A.2d at 437. Accordingly, Plaintiff is unable to sustain a civil conspiracy claim upon which relief can be granted.

## IV.    Conclusion

The sequence of events upon which Plaintiff's proposed new claims are based arose from Plaintiff asking Dr. Blair for an alternative to attending his required graduate seminar taught by Dr. Selcer, whom he was suing. After Dr. Blair responded, Plaintiff changed course and stated

that what he really meant was to invoke TAP No. 33. Plaintiff's rationale in support of adding the new claims rests almost entirely upon demonstrably untrue averments, legal argument, misconstruing the plain text of the emails, and an unwarranted reliance on Duquesne University's TAP No. 33 Policy. As discussed above, it would be futile to permit the proposed new claims to proceed. Leave to amend will not be permitted because there are no nonfrivolous allegations that would render the proposed causes of actions viable. Accordingly, the following order is hereby entered.

## **ORDER**

AND NOW, this 8th day of May 2026, for the reasons set forth above, it is hereby ORDERED that Plaintiff David Mullins' Motion for Leave to File Second Amended Complaint, ECF No. 30, is DENIED.

Leave to amend his denied, as further amendment would be futile.

IT IS FURTHER ORDERED that Defendants shall file a responsive pleading to Plaintiff's Amended Complaint, ECF No. 4, no later thatn May 22, 2026.

__s/*Marilyn J. Horan*_____
Marilyn J. Horan
United States District Court Judge

David Michael Mullins
430 S. Fairmount St. Unit 1
Pittsburgh, PA 15232