IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 25-1366 |
| | ) | |
| DUQUESNE UNIVERSITY OF THE | ) | |
| HOLY SPIRIT, ALICIA SIMPSON, | ) | |
| ADAM WASILKO, ANNE | ) | |
| MULLARKEY SAWA, and DANIEL | ) | |
| SELCER, | ) | |
| | ) | |
| Defendants. | ) | |

**Opinion and Order on Motion to Strike**

The Court previously denied Plaintiff David Mullins' Motion to File a Second Amended Complaint. Op. and Order, May 8, 2026, ECF No. 45. Plaintiff then filed a Motion for Reconsideration of that decision, with Brief in Support. ECF No. 47 & 48. Presently before the Court is Defendants' Motion to Strike Plaintiff's Motion for Reconsideration and Brief in Support. ECF No. 50. Plaintiff filed a Response in Opposition to Defendants' Motion, to which Defendants have filed a Reply. ECF No. 53, 54. For the reasons stated below, Defendants' Motion to Strike will be denied.

I.       **Authority for Imposing Sanctions**

Defendants seek, at a minimum, to strike Plaintiff's Motion and Brief as violative of this Court's Order regarding the use of Artificial Intelligence Tools. *See* Op. and Order, December 5, 2025, ECF No. 42, at 5. Courts have the inherent power to enforce their own Orders. *Chambers v. NASCO*, 501 U.S. 32 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'")

1

(quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). Thus, this Court retains inherent power to enforce its own Orders as it sees fit.

Defendants also request sanctions against Plaintiff under Federal Rules of Civil Procedure 11 and 37. Rule 37 applies only to issues regarding discovery, which is inapplicable here. Fed. R. Civ. P. 37 ("Failure to Make Disclosures or to Cooperate in Discovery; Sanctions"). Plaintiff objects to the Court imposing sanctions pursuant to Rule 11, because Defendants have not complied with Rule 11(c)(2)'s "safe harbor" requirement. Fed. R. Civ. P. 11(c)(2) (permitting a party time to withdraw or correct the allegedly sanctionable filing). Accordingly, Rule 11 sanctions cannot be imposed at this time based upon Defendants' Motion alone. However, if a Court finds, at any time, that a litigant has engaged in sanctionable conduct under Rule 11, "the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). After notice is provided in the form of a show cause order, and the litigant has been afforded a reasonable opportunity to respond, the court may impose sanctions. Fed. R. Civ. P. 11(c)(1). Here, if the Court found sanctionable conduct in violation of Rule 11, a show cause order would be entered before imposition of potential sanctions. *See Jakes v. Youngblood*, No. 2:24-CV-1608, 2025 WL 2371007 (W.D. Pa. June 26, 2025) (Stickman, J.) (issuing show cause order after finding fabricated quotations from caselaw, non-existent quotations, and repeated misrepresentation of case law in lawyer's briefs).

Finally, Defendants invoke Rule 12(f) as authority for striking the Motion and Brief. Plaintiff objects to the Court relying on Rule 12(f), because that Rule specifically applies to "pleadings," not motions and briefs. Fed. R. Civ. P. 12(f) (stating that a court may strike "a pleading"); *compare* Fed. R. Civ. P. 7(a) (defining "pleadings" allowed and 7(b) separately

addressing the form of "Motions and Other Papers"). Nonetheless, the Court has the power to strike a motion or brief pursuant to its inherent authority and/or a violation of a court order. *See, e.g., Jakes*, No. 2:24-CV-1608, 2025 WL 2371007 (striking lawyer's error-ridden Motion and Reply Brief).

## II.    The Court's AI Use Order

On December 5, 2025, in this case, the Court issued an Order with respect to the use of generative artificial intelligence tools, directing that all parties shall comply with the following:

> The use of Artificial Intelligence or Generative Artificial Intelligence, raises a number of practical concerns for the Court, including the risk that the generative Artificial Intelligence tools produce legally or factually incorrect information, produce incorrect quotations, produce incorrect case citations, or create unsupported or nonexistent legal citations. Any party, whether representing themselves pro se or through counsel, who uses any generative artificial intelligence tools in the preparation of any pleading to be filed in this matter, must include with the pleading a Certificate stating that Artificial Intelligence and/or Generative Artificial Intelligence tools were used in the preparation of the pleading. The party must also direct opposing counsel and the court to the specific portions of the filing generated by the Artificial Intelligence tools, and certify that counsel or the self-represented party has checked the accuracy of the pleading, including all citations and all legal authorities.

ECF No. 42, at 5. The Court's Order is aimed at preventing "legally or factually incorrect information, [] incorrect quotations, [] incorrect case citations, or [] unsupported or nonexistent legal citations." ECF No. 42, at 5. The final sentence of this Order directs an AI-using litigant to certify that they have "checked the accuracy of the pleading, including all citations and all legal authorities." *Id.*

The Order also directs AI-using litigants to point out the "specific portions of the filing generated by the Artificial Intelligence tools." *Id.* In context, it is expected that the litigant point out any AI-generated portion of the pleading that contains (or contained, until corrected) legally or factually incorrect information, quotations, or "hallucinated" case citations, or unsupported or

nonexistent legal citations. Thus, the Order is aimed at preventing substantive mistakes and falsities related to a person's AI-generated legal research.

Plaintiff included the required certificate of use of artificial intelligence. He states that he used an AI Tool, Anthropic's "Claude," to assist with drafting, wording, organization, and editing; for suggested phrasing for legal arguments or formulations of legal propositions; and for phrasing assistance, structural editing, and stylistic refinement. He also explains that any "AI influence" is embedded within phrasing throughout the pleading. Plaintiff specifically states that he did not use AI tools to generate citations, quotations, legal authorities, or factual assertions.

### III.    Pro Se Pleadings

When reviewing pro se filings, "however inartfully pleaded," pro se plaintiffs must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). "A document filed pro se is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). If the court can reasonably read and understand a pro se filing, it should accept it despite its failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, and/or a litigant's unfamiliarity with pleading requirements. *Garrett v. Wexford Health*, 938 F.3d 69, 94 (3d Cir. 2019); *Boag v. MacDougall*, 454 U.S. 364 (1982). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997).

### IV.    Discussion

Generally, Defendants argue that Plaintiff violated the Court's AI use Order by including a "multitude of inaccurate information, improper case citations, and unsupported legal theories, which strongly suggest Plaintiff's reliance on AI Tools." Mot. Strike at 4. Defendants also argue

4

that Plaintiff's Brief contains unintelligible phrases and arguments. In their Reply Brief, Defendants argue that Plaintiff's pleadings should be stricken for "'pervasive' use of AI tools to draft the Motion for Reconsideration." Deft. Reply Br. 1. The Defendants further point to Plaintiff's "use of unsupported citations and improper reliance on case law, all very likely caused by overreliance on generative AI." *Id.* at 2. Defendants specifically argue that Plaintiff's inappropriate reliance upon AI is revealed by his errors in citing and relying upon *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)[1], *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)[2], and (together) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).[3]

### A. Relevant Law Regarding Sanctionable AI-Use Conduct

"Every lawyer knows that citing fake cases in a court filing is a terrible decision." *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1256 (N.D. Ala. 2025). There are a multitude of resources and tools a lawyer may rely upon in preparing a pleading. "In researching and drafting court submissions, good lawyers appropriately obtain assistance from junior lawyers, law students, contract lawyers, legal encyclopedias and databases such as Westlaw and LexisNexis." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023). AI is another such resource.

---

[1] Regarding *Phillips*, Defendants argue that Plaintiff's use reveals inappropriate reliance on AI Tools because he failed to account for *Iqbal*, a post-*Phillips* case; erroneously cited *Phillips* for pleading requirements for fraud; and cited *Phillips* for a doctrine regarding consideration of documents, which was not discussed in that case.

[2] Regarding *Max's Seafood*, Defendants argue Plaintiff cited the case as support for various phrases and concepts not appearing therein; and he cited it as support for challenging the Court's application of *Iqbal*, which was decided ten years after *Max's Seafood*.

[3] Regarding *Twombly* and *Pension Benefit Guaranty*, Defendants argue that Plaintiff erroneously cites these cases in support of the standard to apply on a motion to amend, but neither case addressed that standard.

Just like Westlaw and LexisNexis, "there is nothing inherently improper about using a reliable artificial intelligence tool for assistance." *Id.*

If a document is filed containing fake case citations, invented quotations, or similar egregious errors, the lawyer may face sanctions. Whether a litigant uses AI Tools or one of the other resources identified above to prepare a motion or brief, the responsibility of reviewing the final product for accuracy remains the same. Thus, it is not the *use* of AI itself that is sanctionable, but rather the failure to sufficiently review an AI-generated filing. A review of cases addressing sanctionable AI use informs the Court that the potentially sanctionable conduct almost always results from a lawyer's failure to properly review and correct a document prior to submission. As explained above, this Court's AI Order is similarly aimed at eliminating the central problem: AI-generated *falsehoods* in legal documents. *See Lifetime Well LLC v. IBSpot.com Inc.*, 819 F. Supp. 3d 373, 378 (E.D. Pa. 2026) (addressing "misuse of artificial intelligence in briefing," which "contained at least eight false case citation hallucinations generated by artificial intelligence"), *id.* at 384 (citing seven "exemplar" cases where sanctions were imposed for AI use resulting in non-existent authorities or hallucinations); *Johnson*, 792 F. Supp. 3d at 1256 (addressing "false statements of law generated in the first instance by AI"), *id.* at 1266 (collecting cases); and *Mata*, 678 F. Supp. 3d at 448 (describing how law firm "abandoned their responsibilities when they submitted non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT"). The Court did not find any recent cases imposing sanctions for using AI tools only to assist with drafting, editing, and other composition issues.

## B.  Whether Sanctions for AI Use in this Case are Appropriate

As explained, the Court's Order governing the use of AI Tools in this case is aimed at ensuring that litigants who use artificial intelligence tools in preparing their pleadings do not consequently produce legally or factually incorrect information, incorrect case citations, or unsupported or nonexistent legal citations. Defendants' arguments in support of striking Plaintiff's pleading do not sufficiently allege this serious and sanctionable variety of AI use. Plaintiff's Brief presents neither inaccurate, false, or non-existent case citations, nor accompanying legal propositions that would otherwise be unsupported because the AI generated case citations were false or incomplete. Plaintiff's certification confirms that he did not use any AI Tool to generate citations, quotations, legal authorities, or factual assertions. Therefore, Plaintiff's pleading should not contain the kinds of sanctionable AI use conduct as identified in the cases cited above (generating or including false citations, false quotes, and the like). Accordingly, sanctions against Plaintiff for using AI to generate false or fictious citations or quotations are not appropriate.

## C.  Plaintiff's Use of AI in Preparing his Brief

Defendants primarily challenge the substance and structure of Plaintiff's legal arguments, how he chooses to use cases to support his arguments, his legal analysis as to what the cases mean, and his alleged failure to support his legal theories. Defendants argue that such alleged pleading deficiencies are the result of a "pervasive" use of AI to draft his pleadings and which "strongly suggest" a reliance on AI Tools. As explained above, the Court Order is broadly intended to eliminate AI-generated falsities in court pleadings. It appears that what Defendants are primarily concerned with are the substantive content and organization of Plaintiff's brief insofar as AI was used, and that Plaintiff allegedly did not thoroughly review his Brief before

submission. A cursory review of Plaintiff's Brief shows, as Plaintiff certified, that he used AI to assist with drafting, wording, phrasing assistance, stylistic refinement, organization, editing, structural editing, suggested phrasing for legal arguments, and suggested phrasing for formulations of legal propositions. However, the Court declines to strike Plaintiff's Brief based upon the use of AI in assisting with preparing his Brief.

With respect to Defendants' allegations regarding the use of specific case citations, only a few, but not all, of the examples pointed out by Defendants are unsupported by Plaintiff's case citation. For example, on page 3, Plaintiff states that the Court's Order "conflates Rule 9(b) particularity with proof, contrary to *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)." Defendants correctly contend that *Phillips* does not address fraud or Rule 9(b). Neither the term "fraud," nor "Rule 9(b)" appear in the *Phillips* decision, but it is clear from context that Plaintiff believes the Court imposed a higher standard in analyzing his proposed fraud claims than is permitted under a futility or motion to dismiss standard. This does not appear to the Court to amount to sanctionable AI use, as Plaintiff's meaning is clear.

Similarly, on page 6, Plaintiff states: "Where a document admitted under the [integral-documents] doctrine is ambiguous on its face, or where two reasonable readings of the document are available, the Rule 12 inference rule applies to the document itself: the contested reading goes to the non-movant." ECF No. 48, at 6. Plaintiff cites *Phillips*, 515 F.3d at 233, to support this proposition, but *Phillips* does not address the handling of documents by a court. Nonetheless, the argument Plaintiff makes is, at least, relatively clear: when conducting a futility analysis, if the court considers an outside document that is ambiguous, or presents two opposing reasonable readings, the court is required to err in favor of Plaintiff and not rely on the ambiguous document as authority for a finding of futility.

There are other similar examples of Plaintiff including a citation that does not appear to directly support its adjacent proposition. In each instance, however, Plaintiff's legal argument is decipherable, which may reasonably support a conclusion that Plaintiff included such citations in a good faith belief that they were appropriate. It is also possible, based upon his certified use of AI, that Plaintiff's use of AI provided recommendations for case citations.[4] This may especially be true given the multitude of string citations, with at least one lengthy four-case string citation appearing in the middle of a sentence. Specifically, the examples pointed out by Defendants, and those discovered by the Court, contain supporting authority falling under two categories: (i) citations that are generally supportive of Plaintiff's overall argument, but not indicative of negligent failure to review his Brief; and (ii) citations that appear to merely be reinforcement of case law in support of the futility standard, the motion to dismiss standard, or the reconsideration standard. Such citations, while unconventional and, at times confusing, do not appear to be intentional, but an example of a pro se plaintiff, using AI, and referencing often-cited case law for relevant standards of law, all argued in favor of granting reconsideration. Defendants' arguments, and Plaintiff's Reply to said arguments, appear to the Court to be in favor of and against the substance of Plaintiff's Motion for Reconsideration. The examples cited by Defendants, however, do not amount to sanctionable AI use conduct.

### D.  Plaintiff's Brief in Support of Motion for Reconsideration

Defendants' final argument is that Plaintiff's Brief in Support of his Motion for Reconsideration should be stricken because it is replete with "a multitude of legally

---

[4] Plaintiff certified, in part, that he used AI to assist with  drafting, wording, phrasing assistance, stylistic refinement, organization, editing, structural editing, suggested phrasing for legal arguments, and suggested phrasing for formulations of legal propositions.

inaccurate information, [] unsupported legal theories," "unintelligible phrases and arguments," and "indecipherable phrases" ECF No. 51, 4, 8, & 9. Defendants are largely correct in their characterization of Plaintiff's Brief. It is, sesquipedalian in places, convoluted, obtuse, repetitive, and difficult to follow. Plaintiff's Brief includes unusual phrasings, compound words, and references, which at times, are unique to Plaintiff. The substantive arguments are particularly byzantine. They are unnecessarily confusing, convoluted, dense, repetitious, and over-argued. Arguments made in one section appear again, in part, in other sections, serving only to confuse the reader. Plaintiff's unique headings, phrasings, and nomenclature do not make it any easier for the reader of the Brief. However, the Court cannot say that the "true substance" of the Brief, though "confused, ambiguous, vague, or otherwise unintelligible," is "well disguised." *Garrett*, 938 F.3d at 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). The Court is at least capable of reviewing the Brief pursuant to the applicable standard and addressing Plaintiff's arguments. The Court further deduces that Defendants are also able to meaningfully respond to the core of Plaintiff's arguments. *Garrett*, 938 F.3d at 94 (it is not uncommon for a pro se litigant to file a pleading that "contains repetitious and irrelevant matter, so long as that disposable husk [surrounds] ... a core of proper pleading") (citation and quotations omitted). To the extent that Plaintiff's structure, phrasing, and arguments prove to be difficult to interpret, that is a consequence Plaintiff must face as the author of the Motion and Brief. Such deficiencies, if any, in this case, do not amount to sanctionable AI use conduct.

## V.    Conclusion

Striking Plaintiff's Motion for Reconsideration and Brief is a drastic remedy. Here, it would serve only to cause additional delay for a case that is already eight months old and yet to generate a response to the Amended Complaint. The Court notes, however, that Defendants'

Motion to Strike has served the function of clarifying certain portions within Plaintiff's Motion and Brief. Similarly, Plaintiff's Response to the Motion to Strike imparts a better understanding of his utilization of AI tools and the representations in his AI certification. As to Defendants' challenges to the substance of Plaintiff's Motion for Reconsideration contained within the Motion to Strike, as well as Plaintiffs' Reply thereto, such arguments are better addressed through briefing upon the Motion for Reconsideration itself. As such, at the parties' discretion, they may include any of their relevant arguments contained in their briefing on the Motion to Strike, in their Response or Reply related to the Motion for Reconsideration. The motion to strike will therefore be denied.

AND NOW, this 15th day of July 2026, Defendants' Motion to Strike Plaintiff's Motion for Reconsideration and Brief in Support, ECF No. 51, is DENIED.

Defendants shall file a Response to Plaintiff's Motion for Reconsideration and accompanying Brief by July 22, 2026. Plaintiff may file a Reply to Defendants' Response by July 29, 2026.

_s/Marilyn J. Horan_
Marilyn J. Horan
United States District Court Judge

David Michael Mullins
430 S. Fairmount St. Unit 1
Pittsburgh, PA 15232

11